UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
CELIA HINSON,
*on behalf of herself and other similarly situated in the*
*proposed FLSA Collective Action,*

                                  Plaintiff,

            -against-

TAMMYS NAIL UTOPIA LLC, TAMARA
OLLIVIERRE,

                                 Defendants.
---------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

23-CV-2395
(Irizarry, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff Celia Hinson brings this action against her former employers, Tammys Nail Utopia LLC ("Tammys Nail Utopia"), and its owner and operator Tamara Ollivierre ("Ms. Ollivierre" and collectively, "Defendants"). Plaintiff alleges that Defendants failed to pay her at the applicable minimum wage for work performed in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL") §§ 650 *et seq.*; failed to pay her overtime wages in violation of FLSA §§ 201 *et seq.* and the NYLL; failed to provide her with appropriate written notices in violation of NYLL § 195(1); failed to provide her with appropriate wage statements in violation of NYLL § 195(3); and failed to pay her additional compensation of one hour's pay at the basic minimum hourly wage for each day during which her shifts spread over more than ten (10) hours in violation of NYLL §§ 650 *et seq. See generally* Dkt. No. 1.

Currently pending before this Court, on a referral from the Honorable Dora L. Irizarry, United States District Judge, is Plaintiff's Motion for Default Judgment ("Plaintiff's Motion"). Dkt. No. 20; *see also* April 12, 2024 Referral Order.

For the reasons set forth below, this Court respectfully recommends that Plaintiff's Motion be granted in part and denied in part. Specifically, the undersigned respectfully recommends that the District Judge grant in part Plaintiff's Motion for Default Judgment as follows: (1) a default judgment should be entered jointly and severally against Defendants Tammys Nails Utopia LLC and Tamara Ollivierre; and (2) Plaintiff should be awarded damages which include: (a) $2,600.00 for unpaid minimum wages; (b) $19,305.00 for unpaid overtime wages; (c) $21,905.00 in liquidated damages; (d) $988.42 in pre-judgment interest to increase by $5.40 per day until entry of judgment; (e) post-judgment interest as set forth in 28 U.S.C. § 1961(a); (f) an award of attorneys' fees totaling $4,387.50; and (g) an award of costs of $584.00 — for a total award of $49,769.92.

Additionally, the undersigned respectfully recommends that Plaintiff's fifth, sixth, and seventh causes of action be dismissed.

## I.    <u>Background</u>

### A.    **Factual Allegations**

The following facts are taken from the Complaint, Plaintiff's Motion, the attachments filed in support of Plaintiff's Motion; and Plaintiff's testimony at an inquest hearing[1] held on June 21, 2024; the facts are assumed to be true for the purposes of this motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor); *see also BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704 (E.D.N.Y. Dec. 22, 2023), *report and recommendation adopted*, Text Order (E.D.N.Y. Jan. 9, 2024) (same); *Doe v. Hyassat*, No. 18-CV-6110 (PGG) (OTW), 2024 WL 1955354

---

[1] Plaintiff was the only witness who testified at the inquest hearing.

(S.D.N.Y. May 3, 2024) (same); *Byrne v. Yeats Constr. Mgmt., Inc.*, No. 12-CV-5355 (NSR) (AEK), 2022 WL 2532445, at *1 (S.D.N.Y. Jan. 19, 2022), *report and recommendation adopted*, 2022 WL 6698245 (S.D.N.Y. Oct. 11, 2022) (addressing facts obtained from an inquest hearing in the factual background of an opinion addressing a motion for default judgment); *Drice v. My Merch. Servs., LLC*, No. 15-CV-0395 (MKB) (MDG), 2016 WL 1266866 (E.D.N.Y. Mar. 4, 2016), *report and recommendation adopted,* 2016 WL 1266948 (E.D.N.Y. Mar. 31, 2016) (noting, in an action in which the plaintiff moved for default judgment, that the background facts were gleaned, *inter alia*, from an inquest hearing).

Defendant Tammys[2] Nail Utopia is a nail salon; it is a domestic limited liability company organized and existing under the laws of the State of New York.  Dkt. No. 1 ¶¶ 6, 9.  Tammys Nail Utopia maintains a principal place of business at 3224 Church Ave, Brooklyn, NY 11203.  *Id.*  Ms. Ollivierre owns and operates Tammys Nail Utopia and a bar known as "Hidden Gem Getaway" ("Hidden Gem").  *Id.* ¶¶ 16, 20.  According to Plaintiff, Tammys Nail Utopia is located on the first floor of the building while Hidden Gem is located in the basement of the same building.   Dkt. No. 27 at 7 (Inquest Hearing Transcript).  Ms. Ollivierre resides in an apartment above Hidden Gem, at 3324 Church Avenue, Apt. 2, Brooklyn, New York 11203.  *See* Dkt. No. 23 ¶ 3.

At all relevant times, Tammys Nail Utopia had "employees engaged in commerce or in the production of goods for commerce" and had and continues to have an annual gross sales volume of "not less than $500,000.00."  Dkt. No. 1 ¶ 10.  Plaintiff was employed at both Tammys Nail Utopia and Hidden Gem.  *Id.* ¶¶ 6-7, 24-25, 34.   Hidden Gem is not named in the Complaint, has not been served with process, and, ultimately, is not a party to this case.  Ms. Ollivierre, however, is alleged to own and operate both Tammys Nail Utopia and Hidden Gem.  Dkt. No. 23 ¶ 3; *see*

---

[2] In all documentation filed with the Court, "Tammys Nail Utopia" does not include an apostrophe "s" in its name.

*also* Dkt. No. 27 at 32 (Plaintiff testified that Ms. Ollivierre "was the owner" of both Tammys Nail Utopia and Hidden Gem).

Defendants employed Plaintiff from approximately September 15, 2022 to, through and including, December 2022. *Id.* ¶ 34; *see* Dkt. No. 23 ¶ 4. Plaintiff alleges that Defendants "sever[ed] ties" with Plaintiff on or about December 20, 2022. Dkt. No. 27 at 8. Plaintiff worked as a "general worker" at Tammys Nail Utopia and Hidden Gem. *See* Dkt. No. 23 ¶¶ 4-6. At Tammys Nail Utopia, Plaintiff testified that she was the "front desk receptionist," who also "book[ed] the appointments," made sure that "everything is sanitized," and "replenish[ed] goods in the salon," among other things. Dkt. No. 27 at 14, 28. Four nail technicians also worked at Tammys Nail Utopia. *Id.* at 33. Plaintiff testified that she "practically [ran] the nail salon." *Id.* at 29. At Hidden Gem, Plaintiff served as the "bartender/manager"; she "invited people, replenish[ed] the liquor, did the inventory," and encouraged diners to eat at the location, among other things. *Id.* at 14, 30. Plaintiff was the sole bartender at Hidden Gem. *Id.* at 33.

According to Plaintiff, Ms. Ollivierre expanded Plaintiff's duties at Tammys Nails to include working at Hidden Gem downstairs. Dkt. No. 27 at 9-11, 18-21, 23-25, 28-29. Plaintiff testified that after she worked at Tammys Nail Utopia, she would "go downstairs and work" at Hidden Gem; she described it as a "mixed title job," as there were "various things that [she] was doing at the same time." Dkt. No. 27 at 14, 19.

Defendants "possessed substantial control over Plaintiff's . . . working conditions, and over the policies and practices with respect to [her] employment and compensation[.]" Dkt. No. 1 ¶ 23. Specifically, Ms. Ollivierre "determined the wages and compensation of [Tammys Nail Utopia] employees, including Plaintiff, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees." *Id*. ¶ 18.

At issue in the Complaint is Plaintiff's compensation during her time as Defendants' employee. From approximately September 15, 2022 to December 20, 2022, Plaintiff allegedly worked at Tammys Nail Utopia 5 days per week—from 10:00 a.m. to 8:00 p.m.—totaling 10 hours per day. *Id*. ¶ 34; *see also* Dkt. No. 27 at 8, 12-13. During the same period, Plaintiff also allegedly worked 7 nights per week—from 8:00 p.m. to 3:00 a.m. or 5:00 a.m.—totaling 7 to 9 hours per day. Dkt. No. 1 ¶ 34. Plaintiff claims that she worked a "total period of approximately 99 to 113 hours during each of the weeks, respectively." Dkt. No. 23 ¶ 8; *see also* Dkt. No. 26-1 (alleging that she worked, on average, 106 hours per week, or 66 overtime hours). Plaintiff claimed that she suffered "swollen black ankles" because she was working so many hours per week. Dkt. No. 27 at 20.

At the inquest hearing, Plaintiff clarified that from September 2022 to October 2022, Plaintiff was working from 10:00 a.m. to 4:00 a.m. on Tuesdays through Saturdays. Dkt. No. 27 at 28.[3] From November 2022 to December 2022, Plaintiff was working from 10:00 a.m. to 2:00 a.m. on Tuesdays through Saturdays. *Id.* Between September 2022 and December 2022, Plaintiff worked on Sundays and Mondays from 2:00 p.m. to 4:00 a.m. Dkt. No. 27 at 16-17.

Plaintiff alleges that she was paid a flat salary of "approximately $400 per week" throughout the course of her employment, without regard to how many hours she worked. Dkt. No. 1 ¶¶ 35-36; *see also* Dkt. No. 23 ¶ 9. Plaintiff testified that she was only compensated for her work at Tammys Nail Utopia; she was not compensated at all for her work at the Hideaway Gem. Dkt. No. 27 at 20-21.

---

[3] Plaintiff testified that there may have been two or three days in which she ended her workday at Hidden Gem "at like 2:30 a.m. or 3:00 a.m.," but noted that Fridays and Saturdays would "always [be] busy at night." Dkt. No. 27 at 19.

Plaintiff was paid by Ollivierre by check (made out to cash) and then by "Zelle"; Plaintiff did not receive any paystubs.  Dkt. No. 27 at 22-24.  Plaintiff testified that had she received paystubs or any information about her pay, she "would" have made more informed decisions about her finances and her spending.  *Id.* at 22.  Had Plaintiff known of her exact pay, Plaintiff testified that "maybe that would have helped [her] to walk away.  But as [she] said, [she] had no choice because [she] needed the money at the time."  *Id.* at 23.

Plaintiff also alleges that she never received an overtime premium of one and one-half times her regular wage for hours worked in excess of 40 hours per week.  Dkt. No. 1 ¶ 37; Dkt. No. 23 ¶ 11.  Plaintiff further alleges that Defendants failed to provide her with any notice with respect to her wages, either in the form of a time-of-hire wage notice, an annual wage notice, or a poster displaying state and federal wage-and-hour requirements.  Dkt. No. 1 ¶¶ 39-42; Dkt. No. 23 ¶¶ 13-14. 18.  Plaintiff asserts that Defendants' failure to provide accurate wage notices and accurate wage statements denied Plaintiff "her statutory right to receive" pertinent information regarding her "employment and related compensation policies."  *Id.* ¶ 42.  Plaintiff further asserts that the breach of these obligations resulted in "the underpayment of wages averred" in the Complaint.  *Id.* ¶ 43.

### B.   Procedural Background

Plaintiff filed the Complaint on March 28, 2023.  *See* Dkt. No. 1.  On March 31, 2023, the Clerk of Court issued summonses for all Defendants.  Dkt. No. 5.  Plaintiff properly served Ms. Ollivierre on April 4, 2023.  Dkt. No. 8.  Ms. Ollivierre's answer was due on April 25, 2023.  *Id.* Plaintiff properly served Tammys Nail Utopia through delivery to an authorized agent at the Office of the Secretary of State of the State of New York on April 6, 2023.  Dkt. No. 9.  Tammys Nail

Utopia's answer was due on April 27, 2024.  No answers or responses have been interposed by the Defendants.

On April 28, 2023, Plaintiff filed a request for certificate of default.  Dkt. No. 10.  On May 4, 2023, the Clerk of Court entered a default noting that Defendants have "failed to appear or otherwise defend this action."  Dkt. No. 11.  On May 17, 2023, the Honorable Ramon E. Reyes, Jr., then-United States Magistrate Judge, ordered Plaintiff to move for default judgment "on or before May 31, 2023."  *See* Electronic Order dated May 17, 2023.

On May 31, 2023, Plaintiff filed a motion for default judgment.  Also on May 31, 2023, Plaintiff filed a memorandum of law (Dkt. No. 13) and supporting affidavits and exhibits (Dkt. Nos. 14-15).  On November 9, 2023, this case was reassigned to the undersigned.  *See* Docket Entry dated November 13, 2023.

On January 30, 2024, the undersigned issued a Report and Recommendation recommending that Plaintiff's May 31, 2023 motion for default judgment be denied.  *See* Dkt. No. 16; *see also Hinson v. Tammys Nail Utopia LLC*, No. 23-CV-2395 (DLI) (JAM), 2024 WL 334342 (E.D.N.Y. Jan. 30, 2024).  The Report and Recommendation explained that Plaintiff failed to comply with Local Civil Rule 55.2(c) because Plaintiff failed to mail her motion for default judgment to the Ms. Ollivierre's last known residential address.  *Id.* at *4-5.  On February 16, 2024, Judge Irizarry adopted the Report and Recommendation in its entirety.  *See* Text Order dated February 16, 2024.

On March 29, 2024, Plaintiff filed her second motion for default judgment.  *See* Dkt. Nos. 20-23.  On June 21, 2024, an inquest hearing was held before the undersigned.  *See* Minute Entry dated June 21, 2024.  Plaintiff testified at the inquest hearing.  *See* Dkt. No. 27.

At the inquest hearing, Plaintiff stated that she was no longer pursuing a spread-of-hours claim in this case. *See* Dkt. No. 27 at 33. Plaintiff also stated that she was abandoning the proposed FLSA collective action, and thus, the remaining claims are related only to Plaintiff. *See id.* at 35.

## II.    Standard for Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) ("[W]hen a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)). "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). To "enter or effectuate judgment" the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound*

*Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). The plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ)(RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015)).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG)(PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (quotations and citation omitted). The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (cleaned up), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010). As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default, which include "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *See Enron Oil Corp.*, 10 F.3d at 96; *Franco*, 2010 WL 3780972, at *2 (listing factors).

## III.   **Jurisdiction and Venue**

The Court "must satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants." *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

### A.   **Subject Matter Jurisdiction**

Federal district courts have original subject matter jurisdiction over all civil actions "arising under" the "laws . . . of the United States." 28 U.S.C. § 1331. Plaintiff's first and second claims, brought under the FLSA, allege unpaid minimum wages and unpaid overtime wages. Dkt. No. 1 ¶¶ 49-58. Nothing in the record suggests that Plaintiff's FLSA claims are immaterial, made solely for the purpose of obtaining jurisdiction, wholly insubstantial, or frivolous. *Cf. A&B Alt. Mktg. Inc. v. Int'l Quality Fruit Inc.*, 35 F.4th 913, 915 n.2 (2d Cir. 2022). This action thus arises under the laws of the United States, which gives the Court subject matter jurisdiction over this action. *See, e.g., Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 345 (E.D.N.Y. 2014).

The Court also has supplemental jurisdiction over Plaintiff's third and fourth claims, brought under the NYLL, for unpaid minimum wages and unpaid overtime wages, respectively. *See* Dkt. No. 1 ¶¶ 39-68. Supplemental jurisdiction extends to state law claims that so relate to the claims within the court's original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). Claims derive from a common nucleus of operative fact when the facts underlying the claims

"substantially overlap[ ]." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (*quoting Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)). Here, supplemental jurisdiction clearly extends to the third and fourth claims because they virtually overlap with Plaintiff's first and second claim, which seeks to recover for the same violations under the FLSA.

The Court, however, ultimately lacks subject matter jurisdiction over Plaintiff's fifth and sixth claims—in which Plaintiff alleges that Defendants violated the NYLL's requirement that Defendants provide wage notices and wage statements (Dkt. No. 1 ¶¶ 69-75)—because Plaintiff lacks standing to pursue those claims in federal court.

Article III of the United States Constitution restricts federal court power to hearing "cases" and "controversies." U.S. Const. Art. III, § 2, cl. 1. A case or controversy cannot exist if the plaintiff lacks a personal stake, or "standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Standing is not "dispensed in gross." *TransUnion*, 594 U.S. at 431. Rather, the plaintiff must show standing separately for each claim asserted. *Id.*

"[S]tanding is a threshold matter of justiciability, and if a plaintiff lacks standing to sue, the Court has no choice but to dismiss the plaintiff's claim for lack of subject-matter jurisdiction." *Dunston v. Piotr & Lucyna LLC*, No. 21-CV-6402 (AMD) (SJB), 2023 WL 5806291, at *4 (E.D.N.Y. July 26, 2023), *report and recommendation adopted*, No. 21CV6402AMDSJB, 2023 WL 5806253 (E.D.N.Y. Sept. 7, 2023) (citing *Tavarez v. Moo Organic Chocolates, LLC*, No. 21-

CV-9816 (VEC), 2022 WL 3701508, at *4 (S.D.N.Y. Aug. 26, 2022)).  "Like all subject matter issues, standing can be raised *sua sponte*."  *Dunston*, 2023 WL 5806291, at *4 (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).

"[A] plaintiff must establish Article III standing for *all* of his claims, whether or not the Court also has supplemental jurisdiction."  *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM) (RML), 2023 WL 2206568, at *3 (E.D.N.Y. Feb. 24, 2023) (emphasis in original).  While a court may hear state claims if they "derive from a common nucleus of operative facts" (*id.* (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966))), a Court cannot "discern of speculate which of the 'operative facts' establish an injury to [a plaintiff] on his NYLL wage notice and wage statement claims."  *Id.*

Here, Plaintiff did not allege facts linking any legally cognizable injury that she personally experienced to Defendants' purported failure to provide wage statements or Defendants' purported failure to provide Plaintiff with notice of her rate of pay, regular pay day, and such other information as required by the NYLL.  The Complaint merely alleges, in a conclusory fashion, that Defendants failed to comply with these statutory mandates.  *See, e.g.,* Dkt. No. 1 ¶¶ 69-75. Moreover, at the inquest hearing, Plaintiff testified that she "would" have made more informed decisions about her financial situation, adding that had she known of her exact pay, Plaintiff testified that "maybe that would have helped [her] to walk away" from working for Defendants. Dkt. No. 27 at 22-24.  But Plaintiff quickly added, in her testimony, that she had "no choice" but to continue working for Defendants regardless of what documentation was provided, as she "needed the money at the time."  *Id.* at 23

As a result, Plaintiff lacks standing to bring her fifth and sixth claims. Indeed, since the Supreme Court issued its decision in *TransUnion*, "courts throughout the Second Circuit have [] found no standing in cases, such as the instant case, where Plaintiffs have not established any injury traceable to violation of the wage notice and statement requirements." *Ramirez v. Urion Constr. LLC*, 674 F. Supp. 3d 42, 55 (S.D.N.Y. 2023) (collecting cases). Plaintiff's theory as to *how s*he was injured by Defendants' failure to provide the required documents is speculative at best. Without a concrete show of harm, Plaintiff's argument is entirely speculative.

The case styled *Quieju v. La Jugueria Inc.*, No. 23-CV-264 (BMC), 2023 WL 3073518 (E.D.N.Y. Apr. 25, 2023) is illustrative here. In *Quieju*, the plaintiff, a former restaurant worker, alleged that his former employer violated the FLSA and the NYLL by, *inter alia*, not providing him "with a time-of-hire wage notice nor with the wage statements" under the NYLL. *Id.* at *1. The court held that the plaintiff was unable to show that he had standing to bring these claims. *Id.* The court reasoned that the plaintiff was actually arguing "that *if* defendants had given him the required documents, those documents *would have* informed him that he was not being paid his required wages. Enlightened by that knowledge, plaintiff then *would have* demanded his required wages. Having made such a demand, defendants *would have* then paid him his required wages, and plaintiff *would have* avoided the injury he suffered by the failure to properly pay him." *Id.* at *2. While the plaintiff tried to argue that this implicit analysis demonstrated that the plaintiff had suffered an actual and concrete injury, "[t]his hypothetical chain of events is not what the Supreme Court means by an 'injury fairly traceable to the allegedly unlawful conduct.'" *Id.* (quoting *California v. Texas*, 141 S. Ct. 2104, 2113 (2021). "The injury that plaintiff suffered (i.e., defendants' failure to properly pay him) is not an injury he sustained because of a lack of the required documents; it is an injury sustained because his employer violated its obligation to pay

minimum wage, overtime, and spread-of-hours pay under other, express requirements of federal and state law." *Quieju*, 2023 WL 3073518 at *2.

As in *Quieju*, Plaintiff has not shown that she suffered a concrete injury resulting from Defendants' purported violations of the NYLL's wage statement and wage notice requirements, as Plaintiff similarly indicates what "would" have occurred rather than what did occur.  Dkt. No. 27 at 22-24.  Thus, Plaintiff lacks Article III standing to pursue her fifth and sixth claims here.  *See, e.g.*, *Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc.*, No. 21-CV-2015 (CBA) (MMH), 2024 WL 1342739, at *1 (E.D.N.Y. Mar. 29, 2024) (noting that "Plaintiff lacks standing to pursue his claims that [the defendant] violated the NYLL's wage notice and wage statement provisions because Plaintiff had not adequately pleaded a tangible injury resulting from [the defendant's] failure to provide the required notices"); *Bayne v. NAPW, Inc.*, No. 18-CV-3591 (MKB) (MMH), 2024 WL 1254197, at *6 (E.D.N.Y. Mar. 25, 2024); *Cao v. Flushing Paris Wedding LLC*, No. 20-CV-2336 (RPK) (JAM), 2024 WL 1011162, at *23 (E.D.N.Y. Mar. 9, 2024), *report and recommendation adopted* (Text Order dated Mar. 29, 2024); *Saavedra v. Dom Music Box Inc.*, No. 21-CV-6051 (ENV) (JAM), 2024 WL 208303, at *5 (E.D.N.Y. Jan. 19, 2024), *report and recommendation adopted* (Text Order dated Mar. 13, 2024); *Esquivel*, 2023 WL 6338666, at *11 (dismissing Plaintiff's NYLL wage notice and wage statement claims without prejudice); *Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to [the d]efendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim." (citation omitted)); *Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649 (PKC) (ST), 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) ("While those may be technical violations of the NYLL, neither [p]laintiff nor the record

demonstrate how those technical violations led to either a tangible injury or something akin to a traditional cause of action[.]").

Because Plaintiff lacks standing, the Court lacks subject matter jurisdiction over her wage notice and wage statement claims under the NYLL. Accordingly, the Court respectfully recommends that Plaintiff's fifth and sixth causes of action be dismissed without prejudice.

As noted above, Plaintiff is no longer pursuing a spread-of-hours claim (seventh cause of action) in this case (*see* Dkt. No. 27 at 33) and, consequently, the Court need not address that claim herein.

**B.    Personal Jurisdiction**

"A court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." *BASF Corp.*, 2023 WL 8853704, at *5 (internal quotation marks and citation omitted); *see also Frost & Miller, LLP v. Heaven's Way Inv. Tr.*, No. 21-CV-6648 (AT) (BCM), 2022 WL 540070, at *2 (S.D.N.Y. Feb. 22, 2022) ("Before a judgment can be entered and damages or other relief can be awarded, even after default, the Court must be satisfied that it has personal jurisdiction over each Defaulting Defendant"). But because personal jurisdiction is a waivable defense, "a district court should not raise personal jurisdiction *sua sponte* when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (quoting *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010)); *see also* Fed. R. Civ. P. 12(h).

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (citation omitted); *see also BASF Corp.*, 2023 WL 8853704, at

15

*5 ("A court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process.") (internal quotations and citation omitted).

Here, the Court has personal jurisdiction over Defendants.  Plaintiff properly served Ms. Ollivierre on April 4, 2023.  Dkt. No. 8; *see also* Fed R. Civ. P. 4(e)(1)–e(2)(A); N.Y. C.P.L.R. § 308(1)-(2).  Plaintiff properly served Tammys Nail Utopia through delivery to an authorized agent at the Office of the Secretary of State of the State of New York on April 6, 2023.  Dkt. No. 9; *see also* Fed. R. Civ. P. 4(h)(1)(A); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1). "[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

Second, New York State has general jurisdiction over its residents.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016).   Tammys Nail Utopia is a domestic limited liability company with its principal place of business in Brooklyn, New York.  *See* Dkt. No. 1 at ¶ 9.  New York courts may exercise jurisdiction over corporations formed under its laws and operating within the state.  *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG) (PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)); *see also* N.Y. C.P.L.R. § 301.  New York courts may also exercise jurisdiction over non-domiciliary corporations or individuals "who transact business within the state" so long as "the cause of action arises from that transaction." *Licci*, 673 F.3d at 60; *see also* N.Y. C.P.L.R. §

16

302(a)(1).  Ms. Ollivierre "possesses or possessed operational control over" Tammys Nail Utopia and had authority to, *inter alia*, "hire and fire employees."  Dkt. No. 1 ¶¶ 16-17.

Accordingly, this Court may exercise personal jurisdiction over Defendants.

### C.   Venue

"A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  Here, Plaintiff alleges that all events relevant to this action occurred in this District.  Dkt. No. 1 ¶ 5.  Accordingly, this Court finds that venue is proper in this District under 28 U.S.C. § 1391(b)(2).

### IV.   __Procedural Compliance with Local Civil Rules 7.1 and 55.2__[4]

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules."  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Company v. Adweek*, No. 16-CV-335 (ENV)(PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)).  "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."  *See Fin. Servs. Vehicle Tr. v. Osmeña*, No. 22-CV-7491 (RPK)(CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (internal quotation marks and citation omitted).

Under Local Civil Rule 7.1, a motion for default judgment must consist of a notice of motion, a memorandum of law, and supporting affidavits and exhibits.  *See* Loc. Civ. R. 7.1(a).

---

[4] The Local Rules of the United States District Court for the Southern and Eastern Districts of New York were updated on July 1, 2024.  As set forth in Local Rule 1.1., "[t]hese Local Civil Rules take effect on July 1, 2024 [] and govern actions pending or filed on or after that date.  For actions pending on the Effective Date, if fewer than 14 days remain to perform an action governed by these Rules, the provisions of the previous Local Rules effective on June 30, 2024 will govern."  Thus, the previous Local Rules are applicable here.

Under Local Civil Rule 55.2, a "party seeking a judgment by default . . . shall append to the application (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment," and must mail these three items to the last known residence of the defaulting party (if an individual).  Loc. Civ. R. 55.2(b)-(c).

Here, Plaintiff has complied with Local Civil Rules 7.1 and 55.2.  Plaintiff's Motion incudes a proper notice of motion and supporting affidavits with exhibits.  *See* Dkt. Nos. 20-23.  These exhibits include the complaint (Dkt. No. 22-5) and certificate of default (Dkt. No. 22-4).  Plaintiff also attaches a proposed form of default judgment.  Dkt. No. 22-6.  Lastly, Plaintiff filed an affidavit of service showing that Ms. Ollivierre was served with a copy of Plaintiff's Motion at her last known residence.  Dkt No. 22-7.  Plaintiff has therefore established compliance with Local Civil Rules 7.1 and 55.2.

## V.    Compliance with the Servicemembers Civil Relief Act

The SCRA requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."  50 U.S.C. § 3931; *see also Windward Bora, LLC v. Ortiz*, No. 21-CV-4154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022).  "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered."  *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012).  "The court lacks the power to excuse compliance with th[is] statute."  *Uribe v. Nieves*, No. 17-CV-5155 (RRM) (RER), 2018 WL 4861377, at *1 (E.D.N.Y. Sept. 26, 2018).

18

Plaintiff's Motion failed to comply with the SCRA by failing to independently confirm with the Department of Defense whether Ms. Ollivierre is in active miliary service. On July 27, 2024, the Court ordered Plaintiff to supplement its pending motion with an affidavit (along with all supporting exhibits) curing this deficiency. On July 29, 2024, the Court granted Plaintiff a brief extension of Plaintiff's deadline.

To ensure compliance with the SCRA, Plaintiff can, for instance, "obtain a report certifying active-duty military status through the Servicemembers Civil Relief Act website." *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD) (RER), 2023 WL 375647, at *5 (E.D.N.Y. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023) (citing https://scra.dmdc.osd.mil/scra). The Court notes that "Plaintiff's burden in this regard is not a heavy one," especially since "the Department of Defense maintains a Servicemembers Civil Relief Act website for the purposes of, among other things, determining whether an individual is on active duty." *Alzal Corp. v. Killer Carz LLC*, No. 15-CV-4968 (RPK) (MMH), 2024 U.S. Dist. LEXIS 59929, at *9 n.4 (E.D.N.Y. Mar. 29, 2024) (citation omitted); *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD) (RER), 2023 WL 375647, at *13 n.3 (E.D.N.Y. Jan. 3, 2023) ("It is possible to obtain a report certifying active-duty military status through the Servicemembers Civil Relief Act website."), *report and recommendation adopted*, 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023).

On July 31, 2024, Plaintiff submitted an affidavit that certifies that, following an investigation, it was determined that Ms. Ollivierre was not on active duty at the time of the default on May 23, 2023. *See* Dkt. No. 29-1. This affidavit is therefore sufficient to establish compliance with 50 U.S.C. § 3931. *See Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD) (RER), 2023 WL 375647, at *5 (E.D.N.Y. Jan. 3, 2023), *report and recommendation adopted*, 2023 WL

375642 (E.D.N.Y. Jan. 24, 2023); *see also Apex Mar. Co. v. Furniture, Inc*., No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012) ("The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered.") (internal citations omitted).

## VI.    <u>Entry of Default</u>

"A threshold question before reaching liability or damages is whether [the defaulting defendant's] conduct is sufficient to warrant default judgment being entered." *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO v. NAMOW, Inc.*, No. 17-CV-1469 (ARR) (SJB), 2018 WL 1440545, at *2 (E.D.N.Y. Feb. 28, 2018), report and recommendation adopted, 2018 WL 1440542 (E.D.N.Y. Mar. 22, 2018). In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp.*, 10 F.3d at 96. "When deciding whether to relieve a party from default or default judgment, we consider the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001); *see also Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (explaining that courts evaluate "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.").

In light of the above, the jurisdictional and procedural prerequisites to entry of a default judgment have been satisfied by Plaintiff. Moreover, Defendants' failure to respond to the

Complaint here was willful. Notwithstanding the notice and service described above, Defendants did not respond to the Complaint, did not appear, and have not in any way attempted to defend this action, thus constituting willfulness in the context of default judgment. *See, e.g., Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946 (JS) (AKT), 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) ("Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Moreover, Plaintiff would be prejudiced if the motion for default were denied in this case "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), report and recommendation adopted, Dkt. No. 18 (S.D.N.Y. Jan. 26, 2009); *see also Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB) (SJB), 2019 WL 312149, at *5 (E.D.N.Y. Jan. 3, 2019), *report and recommendation adopted*, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019) (citations omitted). Plaintiff has no other means to recover on his claims against Defendants except for a default judgment.

Thus, the Court now turns to the liability imposed and damages to be awarded in such a judgment.

## VII.   <u>Liability</u>

### A.   **Statute of Limitations**

As a threshold matter, the Court considers whether Plaintiff's claims are timely under the applicable statutes of limitations. *See Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011). The FLSA's statute of

limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  "When a defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies."  *Rodriguez*, 2011 WL 4962397, at *2 (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010)).  The statute of limitations for NYLL claims is six years.  *See* NYLL §§ 198(3), 663(3).  Both statutes start to run when the employee begins working for the employer.  *Rodriguez*, 2011 WL 4962397, at *2 (citation omitted).

Here, Plaintiff filed the Complaint on March 28, 2023.  *See* Dkt. No. 1.  Given that Plaintiff was employed by Defendants from approximately September 2022 to December 2022, Plaintiff's claims here are timely.

### B.    Whether Defendants are "Employers"

To plead a cause of action under the FLSA, Plaintiff must establish: (1) that the defaulting defendants are employers subject to the FLSA; (2) the plaintiff is an employee within the meaning of the FLSA; (3) that the plaintiff's employment relationships were not exempted from the statute; and (4) a violation of one of the statute's provisions.  *See Rowe v. CC Rest. & Bakery, Inc.*, No. 17-CV-01423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *report and recommendation adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).

The FLSA broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The term "person" in this definition may be an "individual" or "any organized group of persons," including corporations. 29 U.S.C. § 203(a).  The FLSA applies to employees who were either (1) engaged in commerce or the production of goods for commerce or (2) employed in an enterprise engaged in commerce

or in the production of goods for commerce. 29 U.S.C. §§ 206(a), 207(a).[5] "To be an 'enterprise engaged in commerce,' the defendant-employer must have (a) an annual gross sales volume of at least $500,000, and (b) 'employees handling, selling or otherwise working on goods or materials that have been moving in or produced for commerce by any person.'" *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM) (MMH), 2022 WL 875099, at *7 (E.D.N.Y. Mar. 24, 2022) (citing 29 U.S.C. § 203(s)(1)(A)).

Here, Plaintiff alleges the statutory requirements that the Defendants are employers subject to the FLSA; Plaintiff appears to argue that Defendants under the enterprise coverage standard without providing any specific examples. *See* Dkt. No. 21 at 14-15. Nonetheless, based on Plaintiff's allegations that Tammys Nail Utopia has an annual gross sales volume of "not less than $500,000" and "has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" (Dkt. No. 1 ¶ 1), the Court can reasonably infer that at least some of the goods and materials used by Defendants have moved or engaged in interstate or international commerce. *See Kilmchak v. Cardona, Inc.*, No. 09-CV-4311 (MKB) (ARL), 2014 WL 3778964, at *5 (E.D.N.Y. Jul. 31, 2014) (noting that several courts in this district have inferred FLSA enterprise coverage based on the nature of the defendant's business notwithstanding such pleading deficiencies and collecting cases).

Finally, while some of Plaintiff's allegations regarding Defendants' status as employers are conclusory, "multiple courts in this district have held that similarly conclusory allegations of enterprise coverage may be accepted on a motion for default judgment where it may be inferred

---

[5] The NYLL lacks this requirement. *Gangadharan v. GNS Goods & Servs.*, No. 18-CV-7342 (KAM) (MMH), 2022 WL 824135, at *11 (E.D.N.Y. Mar. 18, 2022).

from the type of business enterprise that it was engaged in interstate commerce." *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC) (RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022); *see Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM) (RER), 2021 WL 2401176, at *5 (E.D.N.Y. June 11, 2021) ("[T]he court can reasonably infer that at least some materials handled by the plaintiff-employee have moved or engaged in interstate or international commerce, such as the food, beverages, products, materials, and equipment utilized by the defendants.").

Therefore, this Court finds that Tammys Nail Utopia, and its owner, officer, and/or agent, Ms. Ollivierre, are employers subject to the FLSA.

## C.    Whether Plaintiff was an "Employee"

An "employee" is likewise broadly defined in the FLSA as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Plaintiff satisfies this definition insofar as she alleges that Defendants employed her in multiple roles, including as a receptionist, within this statutory meaning. *See generally* Dkt. No. 1; *Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372 (CBA) (VMS), 2019 WL 5694104, at *5 (E.D.N.Y. Aug. 16, 2019) (determining that the plaintiff was an "employee" under the FLSA because the complaint alleged that he was employed by the defendants), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020). Accordingly, Plaintiff is a covered employee under the FLSA.

## D.    Whether any FLSA Exemptions Apply

Finally, Plaintiff must show that she is not exempt from the FLSA's protections. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015). "[T]he FLSA contains a litany of exemptions." *Id.* (internal quotations omitted); *see* 29 U.S.C. § 213. These include "bona fide executive, administrative, or professional" employees, "outside salesmen,"

24

certain seasonal employees, some employees in fishing, agriculture, and small local newspaper employees, among many others. *See id.* An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Trucks Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010). "[T]he burden of invoking these exemptions rests upon the employer." *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 394 n.11 (1960)). How a plaintiff spent his or her time is a factual question, but whether the employee's activities trigger one of the FLSA's exemptions is a legal one. *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129–30 (2d Cir. 2020).

Here, Plaintiff does not allege any facts that would make her exempt under the FLSA or NYLL. And because Defendants are in default, they have failed to sufficiently invoke any exemptions. *See Ore v. H & C Cleaning Corp.*, No. 22-CV-20 (AMD) (RER), 2022 WL 19520879, at *9 (E.D.N.Y. Dec. 14, 2022) (holding that statutory exemptions did not apply due to defendants' default), *report and recommendation adopted*, 2023 WL 2522814 (E.D.N.Y. Mar. 15, 2023). Thus, Plaintiff's duties do not render her an employee exempt from FLSA's minimum wage and overtime protections.

### E.    Whether the NYLL applies

To prevail on their NYLL claims, Plaintiff must first establish that her employment relationships are covered by the NYLL, which applies to "any person employed for hire by an employer in any employment." NYLL § 190. "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, No. 13-CV-4021 (RRM) (CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). NYLL's definition of "employer" is otherwise "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same

factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV) (VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status), *report and recommendation adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).

Because Plaintiff has established an employer-employee relationship with Defendants under the FLSA, she also has established an employer-employee relationship under the NYLL.

## F.     Whether Defendants are Jointly and Severally Liable

Plaintiff alleges that Defendants are "jointly and severally" liable for the FLSA and NYLL violations. *See* Dkt. No. 1 ¶¶ 24, 52, 62.

As noted above, Ms. Ollivierre is alleged to own and operate both Tammys Nail Utopia and Hidden Gem. Dkt. No. 23 ¶ 3; *see also* Dkt. No. 27 at 32 (Plaintiff testified that Ollivierre "was the owner" of both Tammys Nail Utopia and Hidden Gem). According to the Complaint, "Ms. Ollivierre determined the wages and compensation of employees, including Plaintiff, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees." Dkt. No. 1 ¶ 18.

Given the default here, both Ms. Ollivierre and Tammys Nail Utopia are jointly and severally liable under the FLSA and the NYLL. *See, e.g., Cavalotti v. Daddyo's BBQ, Inc.*, No. 15-CV-6469 (PKC) (VMS), 2018 WL 5456654, at *11 (E.D.N.Y. Sept. 8, 2018) ("As the Court has found that DaddyO's and Mr. Fosdal were jointly Plaintiff's employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any FLSA and NYLL damages award made in Plaintiff's favor"); *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (finding allegations that an individual defendant "was an owner, partner, or manager," coupled with his default, was sufficient to qualify him as an FLSA and an NYLL

employer, and to impose joint and several liability with corporate defendant for wage law violations); *Shim v. Millennium Grp., LLC*, No. 08-CV-4022 (FB) (VVP), 2010 WL 409949, at *1 (E.D.N.Y. Jan. 27, 2010) (on default judgment, finding both the individual defendants and the corporation to be liable under the FLSA where the complaint contained allegations of actions taken collectively by "Defendants"); *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (holding that a corporate officer who is considered an employer under the FLSA is jointly and severally liable along with the corporation); *see also Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 129 (E.D.N.Y. 2011) ("Courts in this circuit have held that the same analysis applies when determining whether defendants are jointly liable as employers under the FLSA and the NYLL." (collecting cases)); *Cnty. of Suffolk v. Golden Feather Smoke Shop, Inc.*, No. 09-CV-162 (CBA) (VMS), 2016 WL 4399309, at *2 (E.D.N.Y. Aug. 17, 2016) ("holding the cigarette business and its operator jointly and severally liable for the civil penalties is appropriate here.").

Accordingly, this Court finds that Defendants are jointly and severally liable for Plaintiff's claims.

### G.    Violations of the FLSA and NYLL

#### 1.    Unpaid Minimum Wages

The FLSA and NYLL each require an employer to pay an employee at least a minimum hourly rate for each hour the employee works. *Zabrodin v. Silk 222, Inc.*, 22-CV-7064 (KAM) (MMH) , 2023 WL 8009319, at *8 (E.D.N.Y. Nov. 20, 2023).  Plaintiff alleges that Defendants willfully and intentionally failed to compensate Plaintiff with the applicable minimum hourly wage in violation of the FLSA and the NYLL.  *See* Dkt. No. 1 ¶¶ 49-52, 59-62.  Plaintiff attaches her affidavit (Dkt. No. 23) to Plaintiff's Motion and also testified at the inquest hearing.  *See* Dkt. No.

27. *See Brito*, 2022 WL 875099, at *10 (noting that a plaintiff may sufficiently establish minimum wage violations through an affidavit or declaration stating the number of hours worked).

In evaluating Plaintiff's claims for unpaid minimum wages, this Court first must establish the applicable minimum wage for Plaintiff's period of employment in 2022. "Section 206 of the FLSA sets forth a minimum hourly wage employers must pay their employees who engage in work affecting interstate commerce." *Santillan v. Henao*, 822 F. Supp. 2d 284, 291 (E.D.N.Y. 2011) (citing 29 U.S.C. § 206(a)(1)(C). At all times relevant to this case, the federal minimum wage was $7.25 per hour. *See* 29 U.S.C. § 206(a)(1)(C). The NYLL likewise requires employers to pay a minimum wage, *see* NYLL § 652, but New York's minimum wage is higher than the federal minimum. During this period, the NYLL minimum wage was $15.00 per hour for employers of any size located in New York City. N.Y. Lab. Law § 652(1)(a)(i)–(ii); 12 N.Y.C.R.R. § 142-2.1(a)(1)(i)–(ii). *See Zabrodin*, 2023 WL 8009319, at *4 (applying the $15.00 per hour minimum wage for a time period in 2022). "Because [p]laintiffs who bring claims under both the FLSA and NYLL recover under the statute that provides the greater measure of damages," the Court applies the higher NYLL minimum wage. *Id.* at *8 (citing *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 49 (E.D.N.Y. 2015)).

Next, Plaintiff has the burden to prove that she was improperly compensated for the work performed and that Defendants had actual or constructive knowledge of the work. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011). Because Defendants defaulted, however, the Court may presume that the plaintiff's recollection and estimates of the hours he worked are accurate. *See Cabrera v. Canela*, 412 F. Supp. 3d 167, 181 (E.D.N.Y. 2019). Indeed, since employer has a non-delegable duty to maintain accurate records of its employees' hours, *see Kuebel*, 643 F.3d at 363, it would be unfair to require more substantial proof of improper

compensation when the defendant is not participating in the case and the plaintiff lacks the ability to obtain the defendant's employment records through discovery. *See Cabrera*, 412 F. Supp. 3d at 181; *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records."). Indeed, Plaintiff testified that she was paid in checks made out to cash (Dkt. No. 27 at 21) and there is no indication that Defendants used any time tracking device that would have reflected actual hours worked. In short, more precise evidence than Plaintiffs' recollections may not even exist. *See Zabrodin*, 2023 WL 8009319, at *8.

The employee's hourly rate of pay is then calculated by dividing the weekly salary by "the total number of hours actually worked." 29 C.F.R. § 778.109 ("The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."); *see also* 12 N.Y.C.R.R. § 142-2.16 ("When an employee is paid on . . . any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings.").

Plaintiff alleges that she worked a "total period of approximately 99 to 113 hours during each of the weeks, respectively." Dkt. No. 23 ¶ 8; *see also* Dkt. No. 26-1 (alleging that she worked, on average, 106 hours per week, or 66 overtime hours). According to Plaintiff, her weekly pay was $400.00. *See, e.g.,* Dkt. No. 27 at 20. Plaintiff alleges that she was paid $10 per hour ($400 divided by 40). *See Ortega v. JR Primos 2 Rest. Corp.*, No. 15-CV-9183 (JCF), 2017 WL 2634172, at *3 (S.D.N.Y. June 16, 2017) ("The plaintiff's weekly salary should therefore be divided by forty hours per week in determining whether the defendants violated the minimum

wage laws.").In other words, for the entirety of Plaintiff's employment, Plaintiff's hourly pay rate was less than the applicable minimum wage rate of $15.00.  N.Y. Lab. Law § 652(1)(a).

Accordingly, the Court respectfully recommends that Defendants should be liable for violating the FLSA and NYLL minimum wage provision, as Defendants paid Plaintiff less than minimum wage.

### 2.     Unpaid Overtime Wages

Plaintiff seeks reimbursement for the overtime wages that she should have received pursuant to the FLSA and NYLL.  *See* Dkt. No.1 ¶¶ 53-58, 63-68.  Both the FLSA and NYLL require employers to pay overtime wages equal to one and one-half an employee's regular salary for every hour worked in excess of forty hours in any given week.  *See* 29 U.S.C. § 207(a); NYLL § 651; 12 N.Y.C.R.R § 142-2.2.  The NYLL characterizes an eight-hour day as a "legal day's work[.]".  N.Y. Lab. Law § 160.

Here, Plaintiff sufficiently establishes that Defendants violated the FLSA and NYLL's overtime pay requirement.  *See Martinez v. Golden Flow Dairy Farms Inc.*, No. 21-CV-2421 (ENV) (MMH), 2024 WL 1242639, at *6 (E.D.N.Y. Mar. 22, 2024) (finding that a plaintiff's allegation that a defendant had a policy and practice of failing to compensate for all hours worked in excess of forty hours per week at the proper overtime rate sufficiently established an overtime claim.).

As noted above, Plaintiff claims that she worked a "total period of approximately 99 to 113 hours during each of the weeks, respectively."  Dkt. No. 23 ¶ 8; *see also* Dkt. No. 26-1 (alleging that she worked, on average, 106 hours per week, or 66 overtime hours).  At the inquest hearing, Plaintiff testified that from September 2022 to October 2022, she was working from 10:00 a.m. to 4:00 a.m. on Tuesdays through Saturdays.  Dkt. No. 27 at 28.  From November 2022 to December

2022, Plaintiff testified that she was working from 10:00 a.m. to 2:00 a.m. on Tuesdays through Saturdays.  *Id.*  Between September 2022 and December 2022, Plaintiff worked on Sundays and Mondays from 2:00 p.m. to 4:00 a.m.  Dkt. No. 27 at 16-17.  Plaintiff claims that she was required to work in excess of forty (40) hours per week but never received an overtime premium of one and one-half times her regular rate of pay for those hours.  Dkt. No. 1 ¶ 37.

Accordingly, Plaintiff's recollection and estimates of hours worked and wages earned is sufficient information to support a reasonable inference that an overtime wage violation occurred.

### 3.    Spread-of-Hours Claim

Under the NYLL, an employee is entitled to earn an additional hour of pay at the minimum wage for each day on which that employee works more than ten hours.  12 N.Y.C.R.R. § 142-2.4. Only employees who make minimum wage or less are eligible for spread-of-hours pay.  *Id.*; *see also Fermin*, 93 F. Supp. 3d at 45-46 ("A limitation upon a plaintiff's eligibility to recover for spread-of-hours is that the plaintiff not earn more than the minimum wage.").  The New York State Department of Labor states "[i]t is important to note that the 'spread -of-hours regulation does not require all employees to be paid for an additional hour, but merely that the total wages paid be equal to or greater than the total due for all hours at the minimum wage plus one additional hour at the minimum wage."  *Singh v. Patel*, No. 12-CV-3204 (SJF) (ETB), 2013 WL 2190153, at *2 (E.D.N.Y. May 16, 2013) (internal citation omitted); *Leon v. Zita Chen*, No. 16 CV 480, 2017 WL 1184149, at *7 (E.D.N.Y. Mar. 29, 2017) ("Courts, however, have given deference to the New York State Department of Labor's interpretation that spread-of-hours does not apply to an employee whose workday is in excess of ten hours if his or her total daily compensation exceeds the New York State Minimum wage multiplied by the number of hours he or she worked plus one additional hour at the minimum wage.").

31

In the Complaint, Plaintiff seeks reimbursement for the additional hours worked pursuant to NYLL spread-of-hours requirement.  Dkt. No. 1 ¶¶ 76-79.  But Plaintiff makes no mention of the spread-of-hour claim anywhere in Plaintiff's Motion.  Plaintiff does not argue that she is entitled to spread-of-hours pay in her brief in support of her motion.  Dkt. No. 21.  Nor does she reference the claim in any of the supporting documents (minus the complaint) attached to Plaintiff's Motion.  Indeed, Plaintiff's proposed default judgment omits any request for damages related to Plaintiff's spread-of-hours claim.  Further, during the inquest hearing, Plaintiff's counsel—responding to this Court's inquiry on the status of the alleged spread-of-hours claim—represented that Plaintiff is no longer "seeking spread of hours [damages]."  Dkt. No. 27, at 33.

Accordingly, in light of Plaintiff's own representations at the inquest hearing, the undersigned respectfully recommends that Plaintiff's seventh cause of action for unpaid spread-of-hours compensation be dismissed.

### 4.      Statutory Penalties

NYLL § 195(1) requires employers to provide employees at the time of hire with a wage notice containing, *inter alia*, the rate of pay, the basis thereof, and pay schedule.  NYLL § 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.

While Plaintiff pleaded that Defendants failed to comply with NYLL § 195(1) and § 195(3), as noted above, Plaintiff nevertheless lacks standing to maintain these claims.  At bottom, Plaintiff fails to allege an injury in fact sufficient to confer standing and has not demonstrated how

her lack of notice or wage statements resulted in an injury greater than Defendants' wage violations.

Accordingly, this Court respectfully recommends that Plaintiff's fifth cause of action for failure to provide wage notices and sixth cause of action for failure to provide wage statements be dismissed for lack of standing.

### 5.    Collective Action Certification

The Complaint states that Plaintiff seeks to prosecute this action as a FLSA Collective Action.  *See* Dkt. No. 1 at ¶¶ 45-48.  The FLSA authorizes employees to sue on behalf of themselves and all other similarly situated employees.  29 U.S.C. § 216(b).  To join in the action, other employees must "opt in" by written consent.  *Id.*  If the plaintiff makes a factual showing that they and the potential opt-in plaintiffs were victims of a common unlawful policy or plan, the court conditionally certifies the action as a FLSA collective action by sending notice to potential plaintiffs who may be similarly situated.  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). After those plaintiffs have opted in, the court determines whether they are in fact similarly situated to the named plaintiff.  *Id.*

Since Plaintiff did not reiterate his collective action certification request in Plaintiff's Motion, the Court considers that request waived.  *See, e.g., Cooper v. Fire & Ice Trucking, Corp*., No. 23-CV-1675 (KAM) (TAM), 2024 WL 3344001, at *9 (E.D.N.Y. July 9, 2024) ("Because Plaintiff did not reiterate his collective action certification request in his Motion for Default Judgment, the Court considers the collective action abandoned."); *Galicia v. 63-68 Diner Corp.*, No. 13-CV-3689 (PKC) (RLM), 2015 WL 1469279, at *1 (E.D.N.Y. Mar. 30, 2015) ("Because Plaintiff now seeks a default judgment and has not reiterated his request for collective action in the present motion, the Court considers Plaintiff's collective action request waived."); *Zabrodin*,

2023 WL 8009319, at *10 (finding that the plaintiff waived a collective action certification request by failing to reiterate this request in the motion for default judgment).

Plaintiff also stated that he was abandoning this claim at the inquest hearing. Dkt. No. 27 at 35 (THE COURT: ". . . It's safe to say that you're, at this stage, abandoning the proposed FLSA collective action? MR. MIZRAHI: Yes, Judge.").

Here, the Court will proceed only with the named Plaintiff; this Report and Recommendation applies only to Ms. Hinson and not to any of Defendants' other employees.

***

Accordingly, this Court respectfully recommends that liability be imposed jointly and severally upon Defendants Tammys Nail Utopia LLC and Tamara Ollivierre for Plaintiff's FLSA and NYLL minimum wage and overtime wage claims. As Plaintiff has established Defendants' liability, the Court turns to request for an award Plaintiff's damages.

## VIII.   **Damages**

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up). Rather, "[t]he [C]ourt must be satisfied that Plaintiff has met the burden of proving damages to the [C]ourt with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (citations and quotation marks omitted). Courts must determine "damages with reasonable certainty," and avoid impermissible speculation. *Pasatieri v. Starline Prod., Inc.*, No. 18-CV-4688 (RPK) (VMS), 2020 WL 5913190, at *2 (E.D.N.Y. Oct. 6, 2020) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

A plaintiff may submit documentary evidence or detailed affidavits to support their damages claim, and the Court may award damages based on the plaintiff's recollection and estimate of hours worked, which are presumed to be correct as a result of the defendant's default. *See, e.g., Brito*, 2022 WL 875099, at *15; *Lopez v. Royal Thai Plus*, LLC, No. 16-CV-4028 (NGG) (SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (a plaintiff "need not compute FLSA damages with precision"), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).

Here, because Defendants have defaulted and no employment records have been produced, the Court will presume the accuracy of Plaintiff's recollection and estimates of hours worked set forth in the affidavits and damage calculations. *See Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 375 (E.D.N.Y. 2022) (calculating damages owed "based partially on the representations" in the complaint as well as plaintiff's damages spreadsheet); *Jin Li v. W. Metal Work & Supply, Inc.*, No. 17-CV-1015 (JBW) (RML), 2019 WL 2436275, at *4 (E.D.N.Y. Feb. 27, 2019) (relying on the plaintiff's recollection of hours worked and wages paid in order to calculate damages). Furthermore, because Plaintiff cannot recover under both the FLSA and NYLL for the same injury, the Court calculates damages under the NYLL, which provides for the greatest recovery. *See Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848 (RRM) (RER), 2022 WL 4646866, at *6 (E.D.N.Y. Aug. 29, 2022), *report and recommendation adopted*, 2022 WL 4662247 (Sept. 30, 2022).

As set forth in Plaintiff's proposed default judgment order and damages calculations, Plaintiff claims "that Defendants are liable for $3,057.14 in unpaid minimum wage compensation, $22,699.29 in unpaid overtime wages, $25,756.43 in liquidated damages, $10,000 in statutory damages under the WTPA, $5,527.50 in attorneys' fees, and $584 in costs." Dkt. No. 22-6 at 5;

Dkt. No. 26-1.  Plaintiff also seeks an award of "prejudgment interest on Plaintiff's unpaid wages award in an amount to be determined by the Clerk of Court, by multiplying $6.35 by the number of days from November 7, 2022 until the day final judgment is entered against Defendants."  Dkt. No. 21 at 22.

### A.    Unpaid Minimum Wage Compensation

The amount of unpaid minimum wage is calculated by subtracting the amount Plaintiff was actually paid from the amount that she should have been paid under the FLSA and NYLL.  *Cooper v. Fire & Ice Trucking, Corp.*, No. 23-CV-1675 (KAM)(TAM), 2024 WL 3344001, at *10 (E.D.N.Y. July 9, 2024).  As noted supra in Section VII.G.i, the applicable minimum wage during the relevant period of September 15, 2022 to December 20, 2022[6] was $15.00 per hour.  *See* N.Y. Lab. Law § 652(1)(a)(i)–(ii).  Therefore, the applicable lawful minimum wage for the relevant period ($15.00) must be multiplied by 40 to account for the appropriate weekly pay for Plaintiff's regular full-time work hours.  *Cooper*, 2024 WL 3344001, at *10.

The Court's calculations of the amount Plaintiff should have been paid for her regular hours (up to forty (40) hours each week) is as follows:

---

[6] The Court notes that Plaintiff's own testimony belies Plaintiff's counsel's damages calculations.  Dkt. No. 26-1.  While the damages calculations submitted to the Court represents Plaintiff's employment as terminating on December 31, 2022, Plaintiff's own testimony notes "we [the parties] didn't sever ties unlike like December, give or take, 20th, because I remember not getting paid for the two last days."  Dkt. No. 27, at 8.

| Minimum Wage Calculation | | | | | |
|---|---|---|---|---|---|
| Time Period | Minimum Wage | Regular Hours Per Week | Weeks in Time Period | Regular Pay Owed Per Week | Regular Pay Owed for Time Period |
| 9/15/2024 to 10/15/2022 | $15.00 | 40 | 4 | $600.00 | $2,400.00 |
| 10/15/2022 to 11/15/2022 | $15.00 | 40 | 4 | $600.00 | $2,400.00 |
| 11/15/2022 to 12/15/2022 | $15.00 | 40 | 4 | $600.00 | $2,400.00 |
| 12/15/2022 to 12/20/2022 | $15.00 | 40 | 1 | $600.00 | $600.00 |
| | | | | Total | $7,800.00 |

The Court calculates the actual compensation received by Plaintiff, along with all total underpayment, as follows:

| Actual Hourly Compensation Received | | | | | | |
|---|---|---|---|---|---|---|
| Time Period | Weekly Pay Received | Converted Hourly Rate | Weeks in Time Period | Total Payment Received for Time Period | Regular Pay Owed for Time Period | Total Underpayment |
| 9/15/2024 to 10/15/2022 | $400.00 | $10.00 | 4 | $1,600.00 | $2,400.00 | $800.00 |
| 10/15/2022 to 11/15/2022 | $400.00 | $10.00 | 4 | $1,600.00 | $2,400.00 | $800.00 |
| 11/15/2022 to 12/15/2022 | $400.00 | $10.00 | 4 | $1,600.00 | $2,400.00 | $800.00 |
| 12/15/2022 to 12/20/2022 | $400.00 | $10.00 | 1 | $400.00 | $600.00 | $200.00 |
| | | | Total: | $5,200.00 | $7,800.00 | $2,600.00 |

In light of the above, the Court find that Defendants should have remitted minimum wage payments in the amount of $7,800.00 for work performed between September 15, 2022 and December 20, 2022. But Defendants only paid Plaintiff a total of $5,200.00 for work performed during the relevant period. The Court thus finds that Plaintiff was underpaid by $2,600.00.

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $2,600.00 for unpaid minimum wage compensation.

### B.      Unpaid Overtime Wage Compensation

The amount of unpaid overtime wages is calculated by subtracting the amount Plaintiff was actually paid from the amount that he should have been paid under the FLSA and NYLL.   *See Cooper*, 2024 WL 3344001, at *10.

To calculate Plaintiff's overtime compensation, the number of hours each Plaintiff worked over forty per week is multiplied by 150 percent of the higher of their regular rate of pay, or the applicable minimum wage.  *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM) (RML), 2022 WL 18999832, at *5 (E.D.N.Y. Dec. 13, 2022), *report and recommendation adopted*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023).   This results in the amount of overtime compensation owed to plaintiff on a weekly basis.  *Id.*  To obtain the total overtime compensation owed for each period, the weekly amount owed is multiplied by the number of weeks in that period.  *Id.*  Any weekly hours worked in excess of forty (40) are multiplied by the applicable overtime wage rate—1.5 times the applicable wage[7]—and added to the amount of regular wages.

The table below delineates the Court's calculation of Plaintiff's outstanding overtime wage payments:

---

[7] "The FLSA provides that overtime pay should be calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater."  *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI)(CLP), 2017 WL 5033650, at *16 (E.D.N.Y. Sept. 22, 2017) (citing 29 U.S.C. § 207; 29 C.F.R. § 778.107).  "New York law also requires that employees be compensated at "one and one-half times the employee's regular rate of pay" and provides that the regular rate should be calculated "in the manner and methods provided in" the FLSA."  *Id.* (citing 12 N.Y.C.C.R.R. § 142-2.2.).

| Overtime Wage Calculation | | | | | | |
|---|---|---|---|---|---|---|
| Time Period | Minimum Wage | Lawful Overtime Wage | Overtime Hours | Weeks in Time Period | Overtime Pay Owed Per Week | Total Overtime Owed |
| 9/15/2024 to 10/15/2022 | $15.00 | $22.50 | 66 | 4 | $1,485.00 | $5,940.00 |
| 10/15/2022 to 11/15/2022 | $15.00 | $22.50 | 66 | 4 | $1,485.00 | $5,940.00 |
| 11/15/2022 to 12/15/2022 | $15.00 | $22.50 | 66 | 4 | $1,485.00 | $5,940.00 |
| 12/15/2022 to 12/20/2022 | $15.00 | $22.50 | 66 | 1 | $1,485.00 | $1,485.00 |
| | | | | | | **$19,305.00** |

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $19,305.00 in unpaid overtime wage compensation for work performed between September 15, 2022 and December 20, 2022.

In sum, the undersigned respectfully recommends that Plaintiff be awarded outstanding minimum wages of $2,600.00 and outstanding overtime wages of $19,305.00 for a total of $21,905.00 in compensatory damages.

### C.    Spread-of-Hours Damages

As noted *supra* in Section VI.G.3, while Plaintiff's seventh cause of action asserts a claim for spread-of-hours damages (Dkt. No. 1 ¶¶ 76-79), Plaintiff has represented to this Court that this claim has been abandoned. Dkt. No. 27 at 33. Therefore, the undersigned respectfully recommends that Plaintiff's seventh claim be deemed abandoned and dismissed.

### D.    Liquidated Damages

Both the FLSA and NYLL generally provide for double (or "liquidated") damages unless the defendant proves a good faith basis to have believed it was complying with the law. *See* 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 663(1). A plaintiff may not recover "duplicative"

liquidated damages (*i.e.*, under both the FLSA and NYLL) for the same course of conduct. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). Courts may, however, decline to award liquidated damages where employers "show[] to the satisfaction of the court" that they acted in good faith and reasonably believed they did not violate the FLSA. *See* 29 U.S.C. § 260.

The NYLL similarly permits employees to recover "an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due" unless the employer provides "a good faith basis to believe that its underpayment of wages was in compliance with the law." NYLL § 663(1). Because "there are no meaningful differences" between the liquidated damages provisions of the FLSA and NYLL, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). "In light of the principle that the law providing the greatest recovery will govern, [a] [p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA." *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020) (quotations and citation omitted).

Here, in light of the above finding that Plaintiff's total compensatory damages amount to $21,905.00, the undersigned respectfully recommends that Plaintiff also be awarded $21,905.00 in liquidated damages.

### E.   Statutory Damages

Plaintiff seeks statutory damages under NYLL's Wage Theft Prevention Act in light of Defendants' willful record-keeping violations. *See* Dkt. No. 22-6 at 5.

"Violations of NYLL § 195(1) carry damages of $50 per workday, for a maximum of amount of $5,000." *Flores v. Andy Constr. NY Inc.*, No. 22-CV-06486 (OEM) (JMW), 2024 WL

2940191, at *17 (E.D.N.Y. Apr. 14, 2024) (citation omitted).  "Similarly, violations of NYLL §

195(3) carry damages of $250 per workday, for a maximum amount of $5,000."  *Id.* (cleaned up).

As noted above, this Court respectfully recommends that Plaintiff's notice and wage

statement claims be dismissed due to Plaintiff's lack of standing.  Therefore, this Court needs not

consider an award of statutory damages.

### F.  Pre-judgment Interest

Though the FLSA does not permit awarding pre-judgment interest in addition to liquidated

damages, the NYLL does.  *Fermin*, 93 F. Supp. 3d at 48.  To avoid giving the plaintiff a windfall,

however, courts award pre-judgment interest only on the compensatory damages award and not on

the liquidated damages award.  *Id.* at 49.  Courts calculate pre-judgment interest on a NYLL award

at a rate of 9% per year.  N.Y. C.P.L.R. § 5004; *Zabrodin*, 2023 WL 8009319, at *12.  For cases

where damages were incurred at various times, the Court may compute interest either upon each

item from the date it was incurred or upon all the damages from a single reasonable intermediate

date.  N.Y. C.P.L.R. § 5001(b).  Courts have discretion to determine a reasonable date from which

to award pre-judgment interest, and the median date between the earliest and latest that the

plaintiff's NYLL claim accrued is considered a reasonable single intermediate date.  *Elghourab v.

Vista JFK, LLC*, No. 17-CV-911 (ARR) (ST), 2019 WL 2431905, at *12 (E.D.N.Y. Jun. 11, 2019).

Here, for ease of calculation and transparency, the Court sets November 2, 2022 as the

intermediate date for Plaintiff because that date marks the halfway point in her employment with

Defendants during the relevant period.  *See Coulibaly v. Millennium Super Car Wash, Inc.*, No.

12-CV-4760 (CBA) (CLP), 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013) (using the

midpoint of the claims to calculate pre-judgment interest).

Plaintiff's combined minimum wage and overtime damages are $21,905.00. Applying a nine percent per annum rate, the Court respectfully recommends that Plaintiff should be awarded $988.42 in pre-judgment interest from November 2, 2022, through May 4, 2023. This amount will increase by $5.40 per day[8] until the date judgment is entered by the Clerk of Court.

### G.    Post-judgment Interest

In the Complaint, Plaintiff also seeks post-judgment interest. *See* Dkt. No. 1 ¶ 68. Plaintiff alludes to post-judgment interest in Plaintiff's Motion. Dkt. No. 21 at 8. While Plaintiff's discussion of her request for post-judgment interest is largely inadequate, the Court nevertheless recommends that Plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961(a). "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." *Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011); *see generally Begum v. Ariba Disc., Inc.*, No. 12-CV-6620 (DLC), 2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015) (awarding post-judgment interest in a FLSA and NYLL wage-and-hour case).

Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of

---

[8] Pre-judgment interest is calculated using the following formula: (total compensatory damages due to plaintiff) multiplied by (.09/365) multiplied by (number of days from midpoint date to the date the Clerk of the Court enters judgment). *See Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD) (RER), 2023 WL 7684775, at *7, n.6 (E.D.N.Y. Oct. 12, 2023), *report and recommendation adopted*, 2023 WL 8021460 (E.D.N.Y. Nov. 20, 2023) (outlining the pre-judgment interest calculation).

As such, pre-judgment interest is calculated as follows: Total Compensatory Damages ($21,905.00) × (0.09/365) × (183 [days between November 2, 2022 and May 4, 2023]) = $988.42.

Per diem interest is calculated as follows: Total Compensatory Damages ($21,905.00) × (0.09/365) = $5.40 per diem.

Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." *Cabrera v. Canela*, 412 F. Supp. 3d 167, 186 (E.D.N.Y. 2019) (quoting 28 U.S.C. § 1961(a)).

Therefore, this Court respectfully recommends that Plaintiff be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. *See Fermin*, 93 F. Supp. 3d at 52.

### H.    Attorneys' Fees

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions." *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS) (AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), *report and recommendation adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020). "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request." *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 12-CV-2180 (AMD) (PK), 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

"The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Hennessy v. 194 Bedford Ave Rest. Corp.*, No. 21-CV-5434 (FB)(RML), 2022 WL 4134502, at *6 (E.D.N.Y. Aug. 8, 2022) (internal citations and quotation marks omitted), *report and recommendation adopted*, 2022 WL 4134437 (E.D.N.Y. Sept. 12, 2022). "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id*. (cleaned up).

"If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up). Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours. *Id*. "The applicant bears the burden to demonstrate reasonableness." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD) (MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

Here, Plaintiff seeks an award of $5,527.50 in attorneys' fees. *See* Dkt. No. 21 at 21. In support of this request, Plaintiff provided the Court with counsel's billing records. Dkt. No. 22-2. But Plaintiff's Motion lacks clarity as to the amount of attorneys' fees sought.

As an initial matter, Plaintiff seeks an hourly rate of $450.00 per hour for Joshua Levin-Epstein, Esq., and $350.00 per hour for Eunon Jason Mizrahi. *See* Dkt. No. 21 at 20-21. But the billing records do not indicate that Mr. Levin-Epstein did any work on this matter. Dkt. No. 22-2. Indeed, Mr. Levin-Epstein's name is nowhere to be found on the billing records. *See id.* Accordingly, the Court only addresses Mr. Mizrahi's time records and the billing records of a paralegal, Alexis Abrego. *See id.*

Mr. Mizrahi seeks an award of attorneys' fees in the amount of $5,425.00 for 15.5 hours of work performed in this matter at a rate of $350.00 per hour. Dkt. No. 21-1. Ms. Abrego seeks an award of fees in the amount of for 2.05, at a rate that appears to be between $50 an hour. *See* Dkt. No. 22-2 (Ms. Abrego's rate on March 28, 2023, in which she bills $50.00 for an hour of work).

Courts in the Eastern District of New York have recently awarded hourly rates" from "$70 to $100 for legal support," "$100 to $200 for junior associates," "$200 to $325 for senior associates," and "300 to 450 for partners" in FLSA cases. *Martinez v. New 168 Supermarket LLC*,

19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 5259056 (E.D.N.Y. Sep. 3, 2020). Higher rates are approved where the party applying for fees supports the hourly rate with evidence such as counsel's extensive expertise, experience before the federal bar, and specialization required to litigate the matter. *Williamsburg Climbing Gym Co. LLC v. Ronit Realty LLC*, No. 20-CV-2073 (FB) (RML), 2023 WL 1072952, at *4 (E.D.N.Y. Jan. 9, 2023), *report and recommendation adopted*, 2023 WL 1070615 (E.D.N.Y. Jan. 27, 2023).

Mr. Mizrahi is an associate at Levin-Epstein & Associates, P.C. *See* Dkt. No. 22 at 2. Mr. Mizrahi graduated from Brooklyn Law School in 2016. *See id.* Plaintiff provided no biographical information about Ms. Abrego.

Ms. Abrego's hourly rate—$50 per hour—is reasonable under the circumstances. But this Court respectfully recommends that Mr. Mizrahi's hourly rate be reduced to $250.00 per hour. A recent decision in this district involving Mr. Mizrahi, *Cooper v. Fire & Ice Trucking, Corp.*, No. 23-CV-1675 (KAM) (TAM), 2024 WL 3344001, at *13 (E.D.N.Y. July 9, 2024), is instructive here. In *Cooper*, the district court found Mr. Mizrahi's "requested hourly rate of $350 excessive because it is at the high end of what courts in this district generally award for work by senior associates in FLSA and NYLL cases." *Id.* (citation omitted). While the district court recognized that other courts in this district have found Mr. Mizrahi's rate to be $325.00 per hour, *id.* (citation omitted), the district court noted that Mr. Mizrahi's rate needed to be reduced to $250.00 per hour because "Plaintiff's counsel made several errors that needlessly complicated the Court's resolution of an otherwise routine default judgment motion." *Id.* (citing *Gesualdi v. Stallone Testing Labs., Inc.*, No. 10-CV-646 (ENV), 2011 WL 2940606, at *1 (E.D.N.Y. July 19, 2011) (explaining that filing, drafting, and calculation errors that waste judicial resources may warrant a fee reduction).

Thus, the district court in *Cooper* reduced "Mr. Mizrahi's hourly rate to $250 per hour." *Cooper*, 2024 WL 3344001, at *14.

As in *Cooper*, Plaintiff's counsel's errors here needlessly complicated and delayed the adjudication of Plaintiff's Motion. As noted above, Plaintiff initially moved for default judgment on May 31, 2023. *See* Dkt. No. 12. But the Court denied that motion due to procedural deficiencies on February 16, 2024. *See* Text Order dated February 16, 2024; Dkt. No. 16. On March 20, 2024, the Court threatened to dismiss this action due to Plaintiff's failure to prosecute. *See* Text Order dated March 20, 2024. On March 29, 2024, Plaintiff filed a second motion for default judgment. *See* Dkt. No. 20. On May 12, 2024, the Court threatened Plaintiff with sanctions after Plaintiff failed to file proof of service of the Court's April 29, 2024 order scheduling an inquest hearing. On June 20, 2024, the Court noted that Plaintiff filed an erroneous damages calculation associated with an unrelated case and ordered Plaintiff to address this error. *See* Text Order, dated June 20, 2024. On July 27, 2024, and again on July 29, 2024, the Court ordered Plaintiff to comply with the SCRA by a date certain; such compliance had been lacking in Plaintiff's two motions for default judgment. *See* Text Order dated July 27, 2024; Text Order dated July 29, 2024; *see generally* Dkt. No. 12.

Given that the errors committed by Plaintiff's counsel have unnecessarily delayed this action, the Court respectfully recommends reducing Plaintiff's counsel's hourly rate to $250.00. *See, e.g., Kennedy v. Imperial Sec. & Consultants LLC*, No. 23 CV 2790 (DLI) (LB), 2024 WL 3387261, at *7 (E.D.N.Y. May 1, 2024) ("if a motion for a default judgment is filed down the road in this action, the Court would recommend awarding Mr. Mizrahi a rate of $250 per hour on any future request for attorney's fees."); *Proano v. Melrose Home Improvement Corp.*, No. 22-CV-6050 (KAM), 2023 WL 8003303, at *12 (E.D.N.Y. Nov. 17, 2023) (reducing Mr. Mizrahi's hourly rate

46

to $250 given counsel's multiple errors "that needlessly complicated the Court's resolution of an otherwise routine default judgment motion"); *Zabrodin*, 2023 WL 8009319 at *14 (reducing Mr. Mizrahi's hourly rate to $200).

As to the hours expended in litigating this action, this Court finds that 17.55 hours generally fall within the range of hours regularly approved in FLSA and NYLL default judgment cases. *See, e.g.*, *Leon v. Chen*, No. 16-CV-480, 2017 WL 1184149, at *10 (E.D.N.Y. Mar. 29, 2017) (finding that 13.51 hours was reasonable in a FLSA/NYLL default judgment motion*); Zhang v. Red Mountain Noodle House, Inc.*, No. 15-CV-628, 2016 WL 4124304, at *7 (E.D.N.Y. July 4, 2016) (approving total of 22.1 hours in default judgment FLSA case), *report and recommendation adopted*, 2016 WL 4099090 (Aug. 2, 2016).

Accordingly, this Court respectfully recommends that Plaintiff's counsel be awarded $4,387.50 in attorneys' fees ($250.00 per hour multiplied by 17.55 hours).

## I.   Costs

When a party is awarded attorneys' fees, it is also entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorney and ordinarily charged to then clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quotations omitted).  To recover these costs, the plaintiff is required to "submit adequate documentary evidence in support." *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *14 (E.D.N.Y. Feb. 24, 2015).

Here, Plaintiff requests an award of $584.00 in costs and has submitted adequate documentary evidence in support of her request. *See* Dkt. No. 22-3.  Specifically, Plaintiff requests an award of $402.00 as reimbursement for the case filing fee.  Dkt. No. 22-3, at 2.  Plaintiff also requests an award of $182.00 as a reimbursement of costs incurred in serving Defendants Tammys

Nail Utopic and Ms. Ollivierre. *Id.* at 3. Under both FLSA and NYLL, a prevailing plaintiff is entitled to recover costs from the defendant. *See* 29 U.S.C. § 216(b); NYLL § 663(1). Ordinarily, plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). Only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable. *Moon v. Gab Kwon*, 99-CV-11810, 2002 WL 31512816, at *8 (S.D.N.Y. 2002) (quoting *Kuzma v. IRS*, 821 F.2d 930, 933–34 (2d Cir. 1987)).

The Court deems Plaintiff's costs reasonable and recommends that Plaintiff be awarded $584.00 in costs.

## IV.    <u>Conclusion</u>

In sum, the Court finds that Plaintiff sufficiently alleges Defendants' violations of the FLSA and NYLL. Accordingly, the undersigned respectfully recommends that the District Judge grant in part Plaintiff's Motion for Default Judgment as follows: (1) a default judgment should be entered jointly and severally against Defendants Tammys Nails Utopia LLC and Tamara Ollivierre; and (2) Plaintiff should be awarded damages which include: (a) $2,600.00 for unpaid minimum wages; (b) $19,305.00 for unpaid overtime wages; (c) $21,905.00 in liquidated damages; (d) $988.42 in pre-judgment interest to increase by $5.40 per day until entry of judgment; (e) post-judgment interest as set forth in 28 U.S.C. § 1961(a); (f) an award of attorneys' fees totaling $4,387.50; and (g) an award of costs of $584.00 — for a total award of $49,769.92.

Additionally, the undersigned respectfully recommends that Plaintiff's fifth, sixth, and seventh causes of action be dismissed.

A copy of this Report and Recommendation is being electronically served on counsel.  This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail on Defendants and to file proof of service on ECF by August 1, 2024.

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). See also Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Irizarry.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:     Brooklyn, New York          **SO ORDERED**.
           July 31, 2024

                                          */s/ Joseph A. Marutollo*
                                          JOSEPH A. MARUTOLLO
                                          United States Magistrate Judge